UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BYRON LEMAN HOOPER,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)　　CIVIL ACTION NO.
VS.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　3:12-CV-5078-G
MARRIOTT INTERNATIONAL, INC.,　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the defendant's motion to apply Ohio law (docket entry 15) and (2) the defendant's motion for summary judgment (docket entry 16). For the reasons stated below, the motion to apply Ohio law is granted, and the motion for summary judgment is denied.

### I.  BACKGROUND

#### A.  Factual Background

This case concerns a slip and fall in the lobby of a hotel in Cleveland, Ohio. Byron Hooper checked into a Marriott Courtyard hotel in Cleveland owned by Marriott International, Inc. on the evening of December 13, 2010.  Plaintiff's

Amended Complaint and Jury Demand ("Amended Complaint") ¶¶ 5-6 (docket entry 39).  It had been snowing that day, and there was snow on the ground when Hooper entered the hotel.  Defendant's Appendix in Support of Motion for Summary Judgment ("Marriott Appendix") at App 4-5 (docket entry 16-2).  Marriott had placed a "wet floor" sign and laid out several rugs at the entrance of the lobby.  *Id.* at App 16-17.  Hooper noticed several puddles in the entryway and by the front desk that appeared to have been formed by melting snow.  Plaintiff's Appendix in Support of Response in Opposition to Defendant's Motion for Summary Judgment ("Hooper Appendix") at App 12-14 (docket entry 27-2).  In addition to the wet floor sign by the front door, Hooper noticed another wet floor sign next to the front desk.  *Id.* at App 14.  Marriott employees had also mopped the floor in the lobby area periodically throughout that evening in an attempt to clean up melted snow.  *See* Marriott Appendix at App 17.

After checking in, Hooper began walking away from the front desk, toward the elevators.  *See* Hooper Appendix at App 9.  In that area of the lobby, there were no wet floor signs, nor any readily apparent water on the floor.  *Id.* at App 14.  After Hooper had walked approximately 25 feet from the front desk, he slipped and fell.  Defendant's Brief in Support of Motion for Summary Judgment ("Marriott Brief") at 2 (docket entry 16-1).  Hooper attempted to stop his fall with his right arm, but the impact jammed his arm into his shoulder socket and caused him to hit his head on

the floor.  Amended Complaint ¶ 12.  After he fell, Hooper noticed that there was a

"sheen on the floor" where he fell.  Hooper Appendix at App 15-16.  He experienced

pain in his head and shoulder for the rest of the evening and into the next day, when

he checked out of the hotel.  Amended Complaint ¶¶ 14-16.

A few days after he returned to Texas, Marriott contacted Hooper to get a

statement about the accident.  *Id.* ¶¶ 17-18.  Hooper told Marriott that he was

experiencing pain from the accident, and Marriott told him to consult a doctor.  *Id.*

¶¶ 19-20.  Hooper then had an x-ray taken which revealed that he had suffered a

subacromial spur in his shoulder.  *Id.* ¶ 22.  He received a cortisone injection in his

shoulder to relieve the pain.  *Id.* ¶ 23.  However, he began experiencing pain again

several months later, so he had an MRI which revealed that he would need surgery to

repair his shoulder.  *Id.* ¶¶ 25-29.  He had that surgery on October 27, 2011, and has

been undergoing physical therapy since that time.  *Id.* ¶¶ 30-31.

B.  Procedural Background

Hooper initially filed his complaint against Marriott on December 12, 2012.

*See generally* Original Complaint.  Marriott was not served until February 8, 2013, *see*

Summons Returned as Executed as to Marriott International, Inc. at 3 (docket entry

6), and it filed its answer on March 1, 2013.  *See generally* Marriot International, Inc.'s

Original Answer (docket entry 7).  On July 19, 2013, Marriott filed a motion

requesting that the court apply Ohio substantive law to this dispute.  *See* Motion to

Apply Ohio Law (docket entry 15).  It then filed a motion for summary judgment

against Hooper's claim on July 26, 2013.  *See* Motion for Summary Judgment (docket

entry 16).

After learning that Marriott had mopped the hotel lobby on the evening of the

accident, Hooper presented new theories of liability in his response to Marriott's

motion for summary judgment, *see* Plaintiff's Brief in Support of Response in

Opposition to Defendant's Motion for Summary Judgment ("Hooper Response")

(docket entry 27-1), and filed an amended complaint containing those theories.  *See*

Amended Complaint.  Marriott was then given the opportunity to file additional

briefing in support of its motion for summary judgment, *see* Order Granting Motion

for Leave to File Amended Complaint (docket entry 38), but it declined to do so.

The matter is now ripe for adjudication.

II.  <u>ANALYSIS</u>

A.  <u>Choice of Law</u>

1.  *Legal Standard*

"A federal court must follow the choice-of-law rules of the state in which it

sits."  *St. Paul Mercury Insurance Company v. Lexington Insurance Company*, 78 F.3d 202,

205 (5th Cir. 1996).  Texas courts follow the Restatement (Second) of Conflict of

Laws ("Restatement") and the "most significant relationship" test.  See *Duncan v.*

*Cessna Aircraft Company*, 665 S.W.2d 414, 420-21 (Tex. 1984) (explaining that the

- 4 -

Texas Supreme Court had "abandoned *lex loci delecti* and replaced it with the most significant relationship approach set forth in §§ 6 and 145 of the *Restatement (Second) of Conflict of Laws*").  Section 6(2) of the Restatement lists "factors relevant to the choice of the applicable rule of law " as follows:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2); *Spence v. Glock, Ges.m.b.H,* 227 F.3d 308, 311-12 (5th Cir. 2000).  Section 145 of the Restatement lays out the specific contacts that are to be considered in tort cases:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2); *see also Webb v. Rodgers Machinery Manufacturing Company*, 750 F.2d 368, 374 (5th Cir. 1985) (applying the Section 145 factors to determine which state's law to apply to a tort issue in Texas). The Restatement further explains that in tort cases, "[t]he applicable law will usually be the local law of the state where the injury occurred." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 156(2). The Fifth Circuit has held that in applying these rules, "[t]he court's analysis under the [Restatement] does not turn on the number of contacts the event had with each jurisdiction, but, more importantly, on the qualitative nature of those contacts as they are affected by the policies of the rule." *Crim v. International Harvester Company*, 646 F.2d 161, 163 (5th Cir. 1981) (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979)); *see also Jackson v. West Telemarketing Corporation Outbound*, 245 F.3d 518, 523 (5th Cir.) ("Although the number of contacts is relevant, the qualitative nature of the contacts controls."), *cert. denied*, 534 U.S. 972 (2001).

The court is not required to apply the laws of a single state to all the issues raised within a case. *See Webb*, 750 F.2d at 374 n.10 ("Stating that Texas and California law governs different issues in this litigation is fully consistent with choice of law principles"); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302, cmt. d ("The courts have long recognized that they are not bound to decide all issues under

the local law of a single state.")  Rather, "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan*, 665 S.W.2d at 421; see also *Tobin v. AMR Corporation*, 637 F. Supp. 2d 406, 412 n.11 (N.D. Tex. 2009) (Lynn, J.) ("Under Texas choice of law rules, the choice of law analysis applies to each claim or issue individually.") (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000))."

## 2. *Application*

Marriott argues that Ohio law should be applied to determine the liability issues in this case.  *See* Motion to Apply Ohio Law at 1.  In support of its position, Marriott asserts that the factors set forth in Section 145 of the Restatement weigh in favor of applying Ohio law -- that (a) the injury occurred in Ohio; (b) the conduct causing the injury occurred in Ohio; (c) Hooper may be a resident of Texas, but Marriott is not; and (d) the relationship between the parties centered solely on the hotel in Ohio where the accident occurred.  See *id.* at 4.  Marriott also argues that the policy considerations under Section 6 of the Restatement point to Ohio law as the proper law to be applied.  *Id.* at 6.  Along these lines, Marriott contends that Ohio has a greater interest in defining the obligations of its business owners to invitees, and that considerations of certainty and uniformity urge against imposing different obligations on landowners depending on whether their guests are from Ohio or another state.  *Id.*  Furthermore, Marriott cites Fifth Circuit precedent for the

proposition that the "application of Ohio law protects the landowners' justified

expectation that their obligations vis-a-vis their land are governed by the law of the

state in which the land is situated." *Id.* (quoting *Crim*, 646 F.2d at 163).

Marriott cites *Crim v. International Harvester Company* to support its position.

In *Crim*, a resident of Texas filed suit after traveling to Arizona and falling ill as a

result of conditions on an Arizona landowner's property. *Crim*, 646 F.2d at 162. In

upholding the district court's application of Arizona law, the Fifth Circuit emphasized

that "Arizona has a specific interest in defining the duty that its landowners and

occupiers of land owe to business invitees." *Id.* at 163. The court also observed that

"application of Arizona law promotes certainty and uniformity; Arizona landowners

should not be subjected to different legal duties depending on an invitee's state of

residence." *Id.*

Hooper argues that *Crim* is distinguishable, and that Texas law should be

applied to decide the liability issues in this dispute. Hooper claims that Texas has a

more significant relationship to this case because he, his witnesses, and his doctors

reside in Texas; his medical treatment occurred here; and his relationship with

Marriott "continued" here. Plaintiff's Response to Defendant's Motion to Apply

Ohio Law at 1-2 (docket entry 20). Hooper relies on *Blanchard v. Praxair, Inc.*, 951

F. Supp. 631 (S.D. Tex. 1996), to argue that Texas has an overwhelming interest in

seeing that its citizens are compensated for their injuries. *Id,* at 6-7. The plaintiff in

- 8 -

*Blanchard* was a resident of Texas who was injured while working in Kansas. *Blanchard*, 951 F. Supp. at 632-33.  The court found that "Kansas has no relation to this action other than the location of the accident.  Furthermore, Texas has a legitimate interest in ensuring that its citizens are adequately compensated for injuries they suffer and guaranteeing a just recovery."  *Id.* at 634 (citing *Guillory on Behalf of Guillory v. United States*, 699 F.2d 781, 786 (5th Cir. 1983)).  However, the court noted "that neither party has voiced any opposition to application of Texas law to the case at bar and that, indeed, both parties have relied on Texas law in their summary judgment briefing."  *Id.*  Importantly, the court also pointed out that "[t]he parties have not raised this issue, and, indeed, have cited premises liability law from both Texas and Kansas," and found that "[t]he law of the two states appears to be very similar."  *Id.*

In addition to the cases cited by the parties, the court found that the Fifth Circuit's opinion in *Guillory on Behalf of Guillory v. United States* provided an illuminating choice-of-law analysis.  In *Guillory*, a Louisiana resident died as the result of the negligence of doctors who were treating him in Texas.  *Guillory*, 699 F.2d at 783.  Both Louisiana and Texas had significant connections to the controversy, so the court focused on determining "which state's law will most effectively advance the recognized policy interests of both Louisiana and Texas."  *Id.* at 785.  The court first found that "Texas has an interest in policing the conduct of its doctors and Louisiana

has an interest in guaranteeing a just recovery for its citizens," but concluded that "application of Louisiana law most effectively promotes the needs of the interstate system, the relevant policies of Louisiana and Texas law and those states' interests in determining the issues in this case, and the basic policies underlying this field of tort law." *Id.* As in *Blanchard*, the court noted that "the standard by which the doctors' conduct would be evaluated would be essentially the same under both Texas and Louisiana law." *Id.* at 786. On the other hand, the standard for who could recover as a result of a doctor's negligence varied significantly between Texas and Louisiana -- only under Louisiana law could the victim's family recover for the loss of love and affection. *Id.* at 784. Therefore, the court emphasized that "Louisiana citizens bear the burden of the tortious conduct in the instant case; they should, therefore, be entitled to the opportunity to obtain the meaningful recovery provided for under Louisiana law," especially since there were no "countervailing circumstances requiring application of Texas law." *Id.* at 787.

The court concludes that *Crim* is the more apt comparison, and that *Blanchard* and *Guillory* are distinguishable. The courts in *Blanchard* and *Guillory* emphasized that the liability standards did not differ between the states at-issue in their choice of law analyses. In *Guillory*, Louisiana law applied essentially the same standard of care on the Texas doctors as did Texas law, so applying Louisiana law would not affect uniformity, predictability, or certainty under the law, nor run counter to the

legitimate expectations of Texas doctors.  In this case, however, Ohio law contains a special doctrine regarding rain and snow that does not exist under Texas law.  See *S.S. Kresge Co. v. Fader*, 158 N.E. 174, 175 (Ohio 1927) (discussed *infra* at Section II.B.3).  That difference will affect at least some of the theories under which Marriott could be liable.  Therefore, the reasons for applying Ohio law -- uniformity, certainty, predictability, and the expectations of Ohio landowners -- would be compromised by applying Texas law.

The court also concludes that the Restatement factors weigh in favor of applying Ohio law to determine liability in this case.  As the Restatement only refers to the domicile or residence of "parties," the place of injury, and the location of the cause of that injury, Hooper's assertions that his doctors and witnesses reside in Texas and that he received his medical treatment in Texas are irrelevant.  See *Brown v. Cities Service Oil Company*, 733 F.2d 1156, 1159 (5th Cir. 1984) (finding that the fact that the plaintiff "was a Texas resident at the time of trial and that he was examined by two Texas doctors in preparation for trial comprise the totality of Texas' involvement in [the] matter" and placing little weight on those connections); *Crim*, 646 F.2d at 162, 163 n.2 (declining to list the plaintiff's treatment from doctors in Texas or the places of residence of those doctors as relevant contacts in determining which state's law to apply when the plaintiff suffered his injury in another state).  Therefore, the only connection to Texas is Hooper's place of residence, which receives less weight

than the place of injury in the choice-of-law analysis.  See *Beatty v. Isle of Capri Casino, Inc.*, 234 F. Supp. 2d 651, 656 (E.D. Tex. 2002) ("[B]oth the case law and the Restatement instruct this court to place more emphasis on the place of the alleged misconduct than on the residential preference of the plaintiff . . . .") (citing *Jackson*, 245 F.3d at 523; *Perez v. Lockheed (In re Air Disaster at Ramstein Air Base)*, 81 F.3d 570, 577 (5th Cir.), *cert. denied*, 519 U.S. 1028 (1996)).  The hotel in Ohio, on the other hand, constitutes "the place where the injury occurred," "the place where the conduct causing the injury occurred," and "the place where the relationship . . . between the parties is centered."  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).

Furthermore, from a policy perspective, the court finds the results of the plaintiff's position to be especially undesirable -- that is, that two people could slip and fall in the same lobby, under the same conditions, but obtain opposite results based upon their states of residence.  That would run counter to any efforts to maintain uniformity, predictability, and certainty under the law, and make it very difficult for landowners to know what actions to take to avoid liability for accidents that occur on their property.  Therefore, the court concludes that Ohio law should be applied to determine whether Marriott is liable for Hooper's injury.

The court notes that the concerns related to recovery discussed in *Guilllory* could be addressed by conducting a separate choice of law analysis at the remedies

stage. Since it is possible that the same policy considerations involving Ohio landowners' desire for consistency in the law do not exist once liability has been resolved and only remedies are being determined, and because Texas does have an interest in ensuring that its residents are properly made whole when they are injured, the choice of law determination could be different regarding remedies. The court does not decide that issue at this time.

### B. Marriott International's Motion for Summary Judgment

#### 1. *Summary Judgment Standard*

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[*] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to

---

[*] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

2.   *Evidentiary Objections*

Before considering the merits of Marriott's motion for summary judgment, the court must address several objections that Hooper makes to Marriott's summary judgment evidence.  Hooper first objects to Marriott's use of his deposition because it was not properly authenticated.  *See* Hooper Response at 3.  Marriott later filed supplementary material to properly authenticate the deposition, so this objection is now moot.  *See* Defendant's Supplemental Appendix in Support of Motion for Summary Judgment (docket entry 29).

Hooper also objects that a statement in the affidavit of  Shane Frownfelter, the manager of the Marriott in which Hooper slipped and fell, is conclusory.  *See* Hooper Response at 3-4.  In his affidavit, Frownfelter stated that "After Mr. Hooper got up, I saw some wet spots obviously caused by melting snow or snow falling off people's shoes."  Marriott Appendix at App 17.  Marriott argues that the statement is not conclusory because "[i]t is undisputed that it had been snowing heavily before the incident and even Plaintiff acknowledged that it was reasonable to assume that water in the lobby was caused by snow being tracked in by people and melting." Defendant's Reply in Support of Motion for Summary Judgment ("Marriott Reply") at 2 (docket entry 37).

The court disagrees.  It may have been reasonable to assume that water on the floor was from melted snow, but it was not undisputed that the particular water

where Hooper fell was from snow falling off of someone's shoe, rather than from Marriott mopping. "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citing 10B CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983). The court agrees that this statement is conclusory, so it will not consider the statement, or any reference to it, in deciding this motion. The court will instead consider the statement to read: "After Mr. Hooper got up, I saw some wet spots."

Lastly, Hooper objects to Marriott's use of a photograph depicting the entrance to the lobby in which Hooper slipped. *See* Hooper Response at 4-5. Marriott submits that this is "a photograph depicting the location and size of the rugs as they would have been in the lobby at the time of the incident in this case." Marriott Appendix at App 17. Hooper argues that the photograph has not been properly authenticated, and that it is unreliable because it was not taken on the day of the accident. Hooper Response at 4-5. The photograph is timestamped with the date "12/23/2010," while the accident actually occurred on December 13, 2010. See *id.* at App 18. In response to Hooper's objection, Marriott clarifies that "Mr. Frownfelter did not state that the photo represented how the mats 'may have been' or 'might have been.' Rather, Mr. Frownfelter stated that the photo reflected how the mats would have

been at the time of the incident based upon his presence at the scene."  Marriott

Reply at 2-3.

Hooper's objection is overruled.  The photograph was properly authenticated

by Frownfelter, who had personal knowledge of what the lobby looked like on the day

of Hooper's injury.  See *United States v. Winters*, No. 12-60378, __ F. App'x __, 2013

WL 3089514 (5th Cir. June 20, 2013), at *2 ("A photograph can be authenticated

by someone other than the photographer 'if he recognizes and identifies the object

depicted and testifies that the photograph fairly and correctly represents it.'")

(quoting *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981)).

Furthermore, to the extent that Hooper objects to Marriott submitting a photograph

from a different day to show "how the mats would have been" on the day of the

accident, the court concludes that his objection goes to the weight that should be

placed on the photograph, rather than its admissibility.

### 3.  *Hooper's Negligence Claim*

To maintain a claim for negligence under Ohio law, a plaintiff must establish

"(1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately

resulting from the breach."  *Robinson v. Bates*, 857 N.E.2d 1195, 1201 (Ohio 2006).

Property owners generally have a duty to "exercise ordinary care and to protect

[business] invitee[s] by maintaining [their] premises in a safe condition."  *Light v.

Ohio University*, 502 N.E.2d 611, 613 (Ohio 1986).  However, "[w]here a danger is

open and obvious, a landowner owes no duty of care to individuals lawfully on the

premises." *Armstrong v. Best Buy Company, Inc.*, 788 N.E.2d 1088, 1091 (Ohio 2003).

Related to the open-and-obvious doctrine is the Ohio Supreme Court's

doctrine regarding rain and snow.  The Ohio Supreme Court has held that:

> Owners or lessees of . . . hotels . . . or other buildings where
> the public is invited to come on business or pleasure, are
> not insurers against all forms of accidents that may happen
> to any who come.  Everybody knows that the hallways
> between the outside doors of such buildings and the
> elevators or business counters inside the building during a
> continued rainstorm are tracked all over by the wet feet of
> people coming from the wet sidewalks, and are thereby
> rendered more slippery than they otherwise would be. . . .
> It is not the duty of persons in control of such buildings to
> keep a large force of moppers to mop up the rain as fast as
> it falls or blows in, or is carried in by wet feet or clothing or
> umbrellas, for several very good reasons, all so obvious that
> it is wholly unnecessary to mention them here in detail.

*S.S. Kresge Co.*, 158 N.E. at 175; see also *Boles v. Montgomery Ward & Co.*, 92 N.E.2d

9, 11 (Ohio 1950) ("A store operator is not ordinarily liable to a patron who slips,

falls and is injured by reason of a wet and slippery condition of a floor caused by rain

blowing into the front of the store and by other patrons dripping and tracking water

onto the floor.").  Courts have generally concluded that even when water is tracked in

beyond a building's entrance area, property owners still do not owe a duty to invitees

to eliminate the risk presented by that water.  See *Paschal v. Rite Aid Pharmacy, Inc.*,

480 N.E.2d 474, 475 (Ohio 1985) (affirming summary judgment against a plaintiff

who had slipped on a puddle created by melted snow fifteen feet inside a store's

entrance); *Haffey v. DeBartolo Corporation*, No. 1-91-18, 1991 WL 271727, at *1 (Ohio Ct. App. Dec. 20, 1991) (affirming summary judgment against a plaintiff who slipped on a puddle formed by melted ice and snow approximately twenty-five to fifty feet inside the entrance of a mall); *Kraus v. W. T. Grant Co.*, 82 N.E.2d 544, 545-46 (Ohio Ct. App. 1948) (upholding a directed verdict against a plaintiff who had slipped on a puddle of water located fifty to seventy-five feet into a store).  However, a more recent opinion reasoned that "the mere fact that rain left the parking lot wet cannot make every puddle of water in the building into an open and obvious hazard," and held that "reasonable minds could differ about the open and obvious nature of" water that was "15 to 20 steps inside the door" of a building, in an interior hallway. See *Schmitt v. Duke Realty, LP*, No. 04AP-251, 2005 WL 1953074, at *4 (Ohio App. Ct. Aug. 16, 2005).

Hooper initially based his claim against Marriott solely on the theory that Marriott had been negligent in failing to clean up the lobby and in not properly warning guests of the danger of water on the floor of the lobby.  *See* Original Complaint and Jury Demand ("Original Complaint") ¶¶ 30-33 (docket entry 1). However, in his deposition, Hooper acknowledged that he knew it was snowing outside, and that one could have reasonably anticipated that snow would have been tracked into the lobby of the Marriott.  *See* Marriott Appendix at App 12, App 14. Therefore, if Hooper had only proceeded under his original theory, summary

- 19 -

judgment may have been proper under *Kresge* and its progeny (though *Schmitt* does raise the possibility that there still would have been a question of fact regarding the open-and-obvious nature of the water).

However, Hooper later amended his complaint to incorporate several theories related to the fact that Marriott had mopped throughout the evening of the accident. Amended Complaint ¶ 33.  Hooper argues that by mopping, Marriott "aggravated an existing hazard" and removed the open-and-obvious nature of the tracked-in water, and that if the wet floor was no longer open and obvious, placing rugs and signs at the entrance of the hotel was not adequate to put him on notice of the wet floor where he slipped.  Hooper Response at 12, 18.

Ohio courts have held that "a landowner or occupier has no duty to a business invitee to remove natural accumulations of ice and snow," but that if the landowner attempts to remove that snow, he "has a duty to use ordinary care not to create a hazard or to aggravate an existing hazard."  *Smith v. Fraternal Order of Eagles*, 529 N.E.2d 477, 479 (Ohio Ct. App. 1987).  In *Smith*, the court reversed a directed verdict against a plaintiff who had slipped and fallen on an incline in the parking lot of a social club.  *Id.* at 478-79.  The court held that because the club had plowed snow from the parking lot, there was a question of fact for the jury regarding whether the club had used ordinary care in removing that snow, or whether they had made the incline more dangerous by doing so.  *Id.* at 479.

In this case, Marriott acknowledges that it did mop, and Hooper disputes that the area where he slipped may have been one that had been mopped, making the water on the floor there difficult to see.  *See* Hooper Response at 8.  Therefore, Hooper raises a factual issue concerning whether Marriott mopped the floor where he slipped, and if it did, whether it exercised reasonable care to avoid aggravating an existing hazard in doing so.

Hooper also argues that Marriott removed the open and obvious nature of the tracked-in water by mopping.  *See* Hooper Response at 14.  It could not be disputed that the open-and-obvious doctrine did apply to the puddles that Hooper saw at the entrance of the hotel, both because they were readily observable and under the *Kresge* line of cases.  However, if the floor where Hooper slipped had been mopped, possibly making the water there harder to see, there is a question of fact whether the water was no longer readily observable and thus open and obvious.  See *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 725 (6th Cir. 2012) (citing Ohio cases) ("Although the open-and-obvious doctrine goes to the existence of a duty, which is a question of law, observability can be rendered a question for the jury when the underlying facts are disputed and reasonable minds could disagree."); *see also* OH. PERSONAL INJURY § 16:34 (2013 ed.) ("Where reasonable minds could differ with respect to whether a danger is open and obvious . . . the obviousness of the risk is an issue for the jury to determine.").

Lastly, Hooper contends that if Marriott did mop the area of the floor where he slipped, he can also proceed under a failure-to-warn theory.  *See* Hooper Response at 18.  Courts have held that when a business invitee slips and falls on water that remains after cleaning, it is for the jury to determine whether wet floor signs that were not immediately near the site of the fall provided adequate warning of the hazard. See *Nienhaus v. The Kroger Co.*, No. 00AP-1083, 2001 WL 664444, at *3 (Ohio App. Ct. June 14, 2001).  Here, Marriott placed two signs in the lobby, but neither was next to the area where Hooper fell.  *See* Hooper Appendix at App 14.  Therefore, if Marriott did mop the area where Hooper fell, there is a question of fact for the jury concerning whether Marriott's two signs constituted adequate warning to avoid liability.

Marriott argues that *Nienhaus* is distinguishable, and that *Haffey*'s holding regarding distance from the entrance of a building is controlling here.  However, Hooper's main claim does not concern the distance from the entrance of the hotel to the area where he slipped.  Rather, his claim focuses on the allegation that Marriott altered the water in the lobby by mopping it, removing its open and obvious quality, and then did not adequately warn invitees of the danger.  Furthermore, *Nienhaus's* holding regarding the adequacy of warning signs is applicable to this case, and the court is persuaded by its reasoning.

- 22 -

Slip and fall cases "sometimes involve narrow distinctions and a decision in each case depends largely on the facts of the particular case." *Boles*, 92 N.E.2d at 11. In this particular case, the court concludes that there are still several factual questions that cannot be resolved through summary judgment.  These questions include: (1) did mopping up the snow and putting a sign by the door constitute an exercise of ordinary care to avoid aggravating a hazard?; (2) did mopping change the open and obvious nature of the tracked-in water?; (3) was a sign at the entrance and another by the check-in desk adequate to put a reasonable person on notice of a slippery floor in the hallway on the way to the elevator?  Because Marriott did not show that there was no genuine dispute of material fact on those issues, summary judgment is denied.

## III.  CONCLUSION

For the reasons stated above, the defendant's motion apply Ohio law is **GRANTED**, and the defendant's motion for summary judgment is **DENIED**.

**SO ORDERED**.

October 28, 2013.

*A. Joe Fish*

**A. JOE FISH**
**Senior United States District Judge**